LEROY G. EVANS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7347.    Promulgated December 15, 1926.

Upon a sale of personal property, the receipt of an agreement from the purchasers to execute promissory notes in a subsequent year, in part payment of purchase price, does not constitute the receipt of cash or its equivalent to the seller who accounts on a basis of cash receipts and disbursements.

*James G. Stewart, Esq.,* for the petitioner.
*F. O. Graves, Esq.,* for the respondent.

The taxes in controversy are income taxes for the calendar year 1920 in the amount of $10,664.68.

### FINDINGS OF FACT.

Petitioner is a citizen of Ohio. On November 29, 1920, he entered into an agreement with E. N. Miller and R. E. Tulloss to sell to

them 60 shares of the capital stock of the Springfield Abattoir Co., of Springfield, Ohio, represented by Certificates Nos. 33, 34, and 49, for a total consideration of $60,000. Of this amount, $5,000 was to be paid in cash and $15,000 in United States Government bonds. For the balance of the consideration due, viz, $40,000, Miller and Tulloss agreed to execute and deliver on the 2nd day of January, 1921, two promissory notes of that date in the amount of $20,000 each, payable to the order of the petitioner, one on or before one year from date and the other on or before two years from date, with interest at 6 per cent per annum until paid. Miller and Tulloss further agreed that at the time of the execution and delivery of the notes they would deposit with the First National Bank of Springfield, Ohio, as collateral security for the payment of said notes, the three certificates of stock of the Springfield Abattoir Co. which were purchased by them, said stock to be returned to them when the notes were paid, and that in the event of the nonpayment of such notes, the petitioner should have the right to sell said stock for the payment of any balance due upon the notes.

It was further agreed that Miller would deliver to the petitioner his passbook No. 19050 of the Merchants & Mechanics Savings & Loan Association of Springfield, Ohio, which showed a balance due Miller of $10,000, and also his passbook No. 18858 of the Springfield Building & Loan Association of Springfield, Ohio, which showed a balance due Miller of $20,000, for the faithful performance of the agreement by Miller and Tulloss, but that, when said notes were executed and delivered by Miller and Tulloss to the petitioner and the stock deposited as collateral with the bank to secure such notes, these passbooks should be returned to Miller; and, in the event that Miller and Tulloss failed to execute and deliver such notes and to deposit the stock as collateral thereto, then the petitioner should have the right to withdraw the money represented by these passbooks and apply the same upon the indebtedness owing to him by Miller and Tulloss and to have the further right to proceed against them and the property of each of them for any balance that might be due the petitioner on the purchase price of the stock, with interest thereon from January 2, 1921.

The entire transaction between the parties to this agreement was carried out strictly in accordance with the terms thereof. On November 29, 1920, petitioner transferred the 60 shares of stock in question to Miller and Tulloss and on that date received $5,000 in cash and $15,000 in Liberty bonds, and he also received the passbooks of the associations mentioned above, the property of Miller. On January 2, 1921, Miller and Tulloss executed and delivered two notes to the petitioner in the amount of $20,000 each, in accordance with the terms of their agreement, and placed the stock which the petitioner had transferred to them in the hands of the First National

Bank of Springfield, Ohio, as collateral security for the payment of the notes. At that time the petitioner returned to Miller the passbooks mentioned above.

The two notes executed and delivered by Miller and Tulloss on January 2, 1921, were afterwards paid during the year 1921 and due return was made of the profit accruing therefrom in the petitioner's return for the year 1921.

The petitioner has always kept his books and made his returns upon the basis of cash receipts and disbursements.

The respondent held that, upon the execution of the agreement and the payment of the $20,000 in cash and Liberty bonds, the transaction was closed. Accordingly, he determined that the entire profit thereon was returnable during the year 1920, which resulted in an additional tax of $10,664.68 for the year 1920, and a reduction of the petitioner's tax liability for the year 1921 in the amount of $4,585.64.

### OPINION.

KORNER, *Chairman:* The petitioner kept his accounts and reported his income on the basis of cash receipts and disbursements. When he sold the 60 shares of stock to Miller and Tulloss he received two things. One was $20,000 (of which $5,000 was cash and $15,000 was United States Government bonds); the other was an agreement that on the 2nd day of the following January, Miller and Tulloss would execute and deliver to petitioner their promissory notes in the amount of $40,000, payable one and two years after date.

The agreement was carried out. Miller and Tulloss executed their notes as they had agreed to do. Petitioner gave back to Miller the passbooks of the latter. This occurred on January 2, 1921. The promissory notes were executed that day and were discharged by payment some time during the year 1921.

The petitioner reported the receipt of $20,000 in his tax return for 1920, and of $40,000 in his tax return for 1921, and reported the profits accordingly. The respondent, in his determination of the deficiency in question here, treated the entire $60,000 as received in 1920 and the entire profit on the transaction as realized in 1920.

When a taxpayer properly accounts on a basis of cash receipts and disbursements, income must be *received.* Section 213 (a) of the Revenue Act of 1918 provides:

The amount of all such items [items included in the term "gross income"] shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period.

Section 212 (b) provides that the net income shall be computed in accordance with the method of accounting regularly employed in

keeping the books of the taxpayer. The petitioner's regularly employed method was that of cash receipts and disbursements.

The question before us is thus narrowed to the single issue of whether petitioner received cash or its equivalent in the amount of $60,000 in the year 1920 out of the transaction herein referred to. We do not need to discuss here what would be the effect if he had received the promissory notes of Miller and Tulloss in 1920. The fact is he did not receive such notes until 1921. What he did receive in 1920 was a promise to execute such notes the following year. In our opinion, this was not the receipt in 1920 of cash or its equivalent.

But it is argued that the promise to execute the notes *in futuro* was secured by collateral and that there was thereby a receipt of cash or its equivalent. We do not think so. Under the terms of the agreement, the petitioner had no right to withdraw any moneys on the passbooks of Miller until there had been a default by Miller and Tulloss. There could not be a default by them until January 2, 1921. In the meantime, the passbooks were held by petitioner as the property of Miller, as a pledge. If Miller had placed a diamond ring in petitioner's hands under the same circumstances, we can not believe that it could be deemed to be income to the petitioner. As a matter of fact, petitioner never had a right, under the agreement, to draw out, dispose of, or reduce to possession the moneys represented by the passbooks, because Miller and Tulloss did not default their agreement. Accordingly, it was obligatory on petitioner to return the passbooks intact to the petitioner which, in fact, he did in 1921. Since we are here concerned only with the calendar year 1920, it is apparent that there could not have been a default by Miller and Tulloss in that year, nor was there any means by which petitioner could realize or receive income on the passbooks in that year. It is equally true that he did not receive any additional sums by reason of the promise of Miller and Tulloss to execute and deliver promissory notes in a subsequent year. We do not believe the theory of installment sales has any application here, one way or another. Under any theory, there must be a receipt of something which represents cash or its equivalent, or which may be made available to the seller as such. In the circumstances of this case, we do not believe these conditions to be met. Even if it should be held that the petitioner received property by reason of the transaction in question, nevertheless, such property had no fair market value at the time of its receipt.

Our opinion is that the petitioner received, in cash or its equivalent in 1920, the amount of $20,000 on the transaction here in question.

*Judgment will be entered on 15 days' notice, under Rule 50.*

GREEN dissents.